IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ATLANTIC RECORDING CORP.**, *et al.* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | **CIVIL ACTION NO. H-06-3578** |
| | § | |
| **ABNER ANDERSON** | § | |
| | § | |
| *Defendant.* | § | |

## O R D E R

Pending before the Court is Plaintiffs' motion for summary judgment. **(Instrument No. 16)**.

## I.

On November 14, 2006, Plaintiffs Atlantic Recording Corporation, Capitol Records, Incorporated, UMG Recordings, Incorporated, Sony BMG Music Entertainment and Artista Records, LLC (collectively, the "Plaintiffs") initiated this suit against Defendant Abner Anderson ("Defendant" or "Anderson"). (Instrument No. 1). In their complaint, Plaintiffs alleged "that Defendant, without the permission or consent of Plaintiffs, has used, and continues to use, an online media distribution system to download" and/or distribute certain sound recordings (the "Copyrighted Recordings"), thereby infringing Plaintiffs' federally registered copyrights in violation of the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. § 101 *et seq.*[1] (*Id.*, at 3). For Defendant's alleged harm(s), Plaintiffs seek injunctive relief "prohibiting Defendant from further infringing Plaintiffs' copyrights, and ordering Defendant to destroy all copies of sound recordings made in

---

[1] The subject Copyrighted Recordings include each of the copyrighted sound recordings listed in Exhibit A, which is attached to Plaintiffs' complaint, in addition to certain of the copyrighted sound recordings listed on Exhibit B, which is also attached to Plaintiffs' complaint. (Instrument No. 1, at 3).

violation of Plaintiffs' exclusive rights." (*Id.*, at 5).  Plaintiffs further seek, *inter alia*, statutory damages, pursuant to 17 U.S.C. § 504, for each instance of Defendant's alleged infringement of the copyrights identified in Plaintiffs' complaint. (*Id.*).

Approximately two months later, on January 22, 2007, Defendant filed his original answer to Plaintiffs' complaint, generally denying all allegations of wrongdoing and asserting four affirmative defenses. (Instrument No. 9).  Defendant's affirmative defenses set forth that: (1) Defendant "took all of the necessary measures to avoid any copyright infringement alleged" in Plaintiffs' complaint; (2) Plaintiffs' complaint fails to state a claim upon which relief can be granted; (3) Plaintiffs themselves are or were complicit in any copyright infringement that may have occurred; and (4) Defendant's allegedly infringing conduct was neither negligent, willful nor intentional. (*Id.*, at 3-4).

Thereafter, on October 31, 2007, Plaintiffs moved for summary judgment.  (Instrument No. 16).  Months later, on January 30, 2008, Defendant filed an out-of-time response to Plaintiffs' motion for summary judgment, which the Court subsequently allowed. (Instrument No. 19).

## II.

The factual background of this case is straightforward. "Plaintiffs are recording companies that own or control exclusive rights to copyrights in sound recordings." (Instrument No. 16, at 1). However, over the last ten to fifteen years, the proliferation of the internet and internet-dependent technologies has led to, according to Plaintiffs, "a massive and exponentially expanding problem of digital piracy[,]" directly resulting in the infringement of Plaintiffs' (and other copyright holders) federally registered copyrights. (*Id.*, at 2). Plaintiffs contend that over the recent years, digital piracy has continually evolved and that today, "copyright infringers use various online media distribution

systems to download (copy) and unlawfully disseminate (distribute) to others billions of perfect digital copies of Plaintiffs' copyrights sound recordings each month." (*Id.*). According to Plaintiffs, "As a direct result of piracy over these peer-to-peer networks, Plaintiffs have sustained and continue to sustain devastating financial losses." (*Id.*).

Relevant to the instant case, Plaintiffs contend that Defendant is one such infringer of their copyrights and that he was found "distributing" the digital music files (that is, the subject Copyrighted Recordings and other copyrighted recordings) identified in Plaintiffs' complaint. (Instrument No. 16, at 2). Specifically, Plaintiffs assert that "on August 16, 2005, at approximately 1:34 a.m. EST, Plaintiffs' investigator, MediaSentry, detected an individual using the screen name 'StolenMagic@KaZaA' who was engaged in the distribution of Plaintiffs' copyrighted sound recordings[.]" (*Id.*). Upon identifying the offending individual's Internet Protocol ("IP") address, IP address 67.10.35.159, MediaSentry apparently contacted the individual's Internet Service Provider ("ISP"), Time Warner Cable ("Time Warner"), to discover the identity of the customer. (*Id.*). Pursuant to a federal court subpoena, the offending individual was subsequently identified by Time Warner as Defendant Abner Anderson. (*Id.*). Plaintiffs assert that at the time MediaSentry detected Defendant online, Defendant was "actively distributing" or availing some 558 digital music files for download to the many users of the subject peer-to-peer network, KaZaA. (*Id.*). At issue in this case are a subset of thirty-one of those digital music files, those files comprising the Copyrighted Recordings at issue in this suit.

## III.

After learning Defendant's identity, on November 14, 2006, Plaintiffs initiated this suit against Defendant, alleging copyright infringement and seeking injunctive relief and damages.

(Instrument No. 1). Thereafter, on October 31, 2007, Plaintiffs moved for summary judgment. (Instrument No. 16). In their motion, Plaintiffs emphasize that, as an initial matter, during the course of discovery in this case, Defendant admitted to: (1) downloading an online media distribution system to his computer, that system being KaZaA; (2) using the KaZaA online media distribution system; (3) using the screen name "StolenMagic@KaZaA" while connected to the KaZaA online media distribution system; and (4) using the KaZaA online media distribution system to both download and make available, without Plaintiffs' authorization or consent, certain Copyrighted Recordings (and other copyrighted sound recordings) identified in Plaintiffs' complaint. (*Id.*, at 3-4; Instrument No. 17, at 5-14 – *First Set of Request for Admissions*). More succinctly, according to Plaintiffs, "Defendant admits that he used the KaZaA online media distribution system . . . to download (and thereby copy) Plaintiffs' [Copyrighted Recordings] and to distribute those [Copyrighted Recordings] over the Internet to millions of other KaZaA users." (Instrument No. 16, at 4; Instrument No. 17, at 5-14 – *First Set of Request for Admission*s). Plaintiffs allege that Defendant carried out the distribution of Plaintiffs' Copyrighted Recordings to others by "placing them in his KaZaA shared folder on his computer . . . and making them available and actively distributing them to other KaZaA users over the Internet." (Instrument No. 16, at 4). Through such overt acts and admissions, Plaintiffs contend that Defendant clearly infringed upon their valid copyrights, therein entitling Plaintiffs to summary judgment as a matter of law on their copyright infringement claim(s) as "there is no genuine issue as to any material fact." (*Id.*, at 7).

In support of these assertions, Plaintiffs explain that they are the valid owners of the subject Copyrighted Recordings and that the Copyright Act grants them, as owners of those valid copyrights, the exclusive right(s) to reproduce and/or distribute copies of those recordings. (Instrument No. 16,

4

at 6). Plaintiffs argue that Defendant has already admitted to violating Plaintiffs' exclusive rights and that independent of Plaintiffs' intent, Defendant's acts, as described, constitute copyright infringement. (*Id.*). For any or all of these reasons, "Plaintiffs seek an award of statutory damages under 17 U.S.C. § 504(c) for Defendant's infringement of each of thirty-one of the Sound Recordings listed on Exhibit A to [Plaintiffs'] Complaint and in Schedule 1, injunctive relief under 17 U.S.C. § 502, and costs under 17 U.S.C. § 505." (*Id.*, at 4). The thirty-one Copyrighted Recordings at issue include the following:

| Name of Sound Recording | Album | Musical Artist | Sound Recording Registration Number |
|---|---|---|---|
| I'm With You | Let Go | Avril Lavigne | SR # 312-786 |
| It's Not Right But It's Okay | My Love Is Your Love | Whitney Houston | SR # 298-453 |
| The Way You Move | Speakerboxx/The Love Below | Outkast | SR # 340-520 |
| Hold Me Now | Into the Gap | Thompson Twins | SR # 52-747 |
| He Wasn't Man Enough | The Heat | Toni Braxton | SR # 287-194 |
| You Make Me Wanna | My Way | Usher | SR # 257-730 |
| Wrapped Around Your Finger | Synchronicity | The Police | SR # 44-862 |
| Mr. Jones | August and Everything After | Counting Crows | SR # 172-267 |
| Loser | Mellow Gold | Beck | SR # 185-369 |
| In My Bed | Dru Hill | Dru Hill | SR # 227-760 |
| Why | My Thoughts | Avant | SR # 281-220 |
| Separated | Separated (single) | Avant | SR # 281-184 |

| The Rock Show | Take Off Your Pants And Jacket | Blink-182 | SR # 301-317 |
|---|---|---|---|
| The Light | Like Water For Chocolate | Common | SR # 297-993 |
| Get At Me Dog | It's Dark And Hell Is Hot | DMX | SR # 252-613 |
| U Not Like Me | Get Rich Or Die Tryin' | 50 Cent | SR # 337-801 |
| Dilemma | Nellyville | Nelly featuring Kelly Rowland | SR # 315-537 |
| Over and Over | Suit | Nelly | SR # 358-551 |
| Kryptonite | The Better Life | 3 Doors Down | SR # 277-407 |
| Every Morning | 14:59 | Sugar Ray | SR # 262-149 |
| She's Out Of My Life | Off the Wall | Michael Jackson | SR # 11-120 |
| Human Nature | Thriller | Michael Jackson | SR # 41-965 |
| Lose My Breath | Destiny Fulfilled | Destiny's Child | SR # 363-786 |
| Because You Loved Me | Falling Into You | Celine Dion | SR # 224-159 |
| Always Be My Baby | Daydream | Mariah Carey | SR # 215-243 |
| Drops of Jupiter | Drops of Jupiter | Train | SR # 293-024 |
| Made You Look | God's Son | Nas | SR # 332-713 |
| Love Don't Cost a Thing | J. Lo | Jennifer Lopez | SR # 293-297 |
| Independent Women, Pt. 2 | Survivor | Destiny's Child | SR # 289-199 |
| Too Legit to Quit | Too Legit to Quit | MC Hammer | SR # 136-387 |
| Here Comes the Hammer | Please Hammer Don't Hurt 'Em | MC Hammer | SR # 133-683 |

(Instrument No. 17, at 47-108).  Plaintiffs seek a minimum statutory damage amount of $750 per

each of these thirty-one Copyrighted Recordings allegedly infringed upon by Defendant, for a sum total of $23,250 in statutory damages, and costs of this suit in the amount of $420. (Instrument No. 16, at 5).[2]

In response, Defendant first argues that this case "is just one of thousands that have been filed by Plaintiffs against unsuspecting, vulnerable Defendants all over the country." (Instrument No. 19, at 1). Defendant further states that "Plaintiffs have joined together to create an army-of-one who claim to be fighting the war against piracy by launching attacks, in the form of lawsuits, on Defendants they know to be innocent actors." (*Id.*). According to Defendant, to date, "this arsenal of corporations and their lawyers have filed tens of thousands of Federal Copyright violation lawsuits against innocent users while doing very little to mitigate their damages by educating the public on the illegality of using peer-to-peer networks." (*Id.*, at 1-2). Consequently, Defendant asserts that Plaintiffs are partially or wholly at fault for any potential infringement that takes place over peer-to-peer networks, such as KaZaA, because Plaintiffs have not distributed "literature" or some other "official statement" to teach the public about the impropriety of using such peer-to-peer networks to share digital music files. (*Id.*, at 2).

Moreover, Defendant argues that genuine issues of material fact preclude summary judgment in Plaintiffs' favor. Specifically, Defendant first argues that "Plaintiffs have failed to prove Defendant acted willfully and . . . [w]hether Defendant's actions were willful is an important element, a genuine issue of material fact, which must decided by a jury." (Instrument No. 19, at 3). Defendant further argues that, even if Defendant did unintentionally infringe Plaintiffs' copyrights,

---

[2]      As an aside, the Court notes that the subject Copyrighted Recordings that Defendant allegedly purloined from Plaintiffs include several musical selections that the Court has, from time to time, enjoyed in the ever-commodious comfort of chambers.

17 U.S.C. § 504(c)(2) provides a court with the discretion to reduce the minimum statutory damage amount to $200 per infringed sound recording, rather than $750, if the court "finds the actor was unaware he was committing an act of infringement." (*Id.*, at 3-4). Similarly, Defendant contends that awarding Plaintiffs $750 in statutory damages for each Copyrighted Recording at issue would result in a total damage award that is "750 times the amount of their actual damages[,]" given that such recordings are each readily available for ninety-nine cents through other online services. (*Id.*, at 4). Morever, Defendant asserts that the imposition of damages in the amount sought by Plaintiffs ($750 per each of the thirty-one Copyrighted Recordings at issue for a total of $23,250) would be "analogous" to imposing punitive damages. (*Id.*). Defendant also argues that he "has a Seventh Amendment right to have a jury determine the amount of statutory damages, if any, that should be awarded to [Plaintiffs]." (*Id.*).

Additionally, included in Defendant's response to Plaintiffs' motion for summary judgment is a notification to this Court of Defendant's "intent to challenge the Constitutionality of the Federal Copyright Statute as asserted by the Plaintiffs in this action." (Instrument No. 19, at 5). Defendant further asks that this Court "certify this challenge of the Constitutionality of [t]he Copyright Act . . . with the United States Attorney General pursuant to 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 5.1(b)." (*Id.*). Given that this case has been on this Court's docket since late 2006 and given that Plaintiffs' complaint indicated their intent to seek statutory damages under the Copyright Act, Defendant's effort to suddenly raise a novel constitutional challenge to that statute – when this case is set for trial only weeks from now – is both delinquent and obviously suspect. Accordingly, because, *inter alia*, Defendant has waited until the eve of this case's disposition to raise this constitutional challenge to the Court in a responsive briefing which was filed out-of-time,

8

Defendant's request for certification is **DENIED**.

## IV.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248. If the evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted. *See Id.* at 2511; *see also Thomas v. Barton Lodge, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886-88 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial.*'"

9

*Matsushita*, 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)) (emphasis in original). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue.").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**V.**

**1.**

Plaintiffs assert that Defendant has infringed their valid copyrights by downloading and/or distributing certain Copyrighted Recordings to other users through the media distribution system or peer-to-peer network KaZaA. Plaintiffs argue that Defendant has admitted to engaging in the offending conduct and that consequently, Plaintiffs are entitled to, at a minimum, a statutory award of damages under 17 U.S.C. § 504(c) for each of the thirty-one Copyrighted Recordings identified as being infringed upon by Defendant.[3]

The United States Copyright Act grants certain rights upon a copyright owner of a sound

---

[3] According to Plaintiffs, Defendant infringed upon substantially more than thirty-one of Plaintiffs' valid copyrights, but Plaintiffs have sued Defendant only on the basis of those thirty-one Copyrighted Recordings identified herein.

recording, including the exclusive right to "reproduce the copyrighted work" and "distribute copies. . . of the copyrighted work." 17 U.S.C. § 106(1), (3). Thus, Title 17 "prohibits infringement by anyone who violates '[a]ny of the exclusive rights of the copyright owner.'" *Prostar v. Massachi*, 239 F.3d 669, 677 (5th Cir. 2001) (quoting 17 U.S.C. § 501(a)). To succeed on a claim that these rights have been infringed, a plaintiff must generally demonstrate two elements: (1) ownership of a valid copyright, and (2) that a defendant violated one or more of the plaintiff's exclusive rights under the Copyright Act. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 199 U.S. 340, 361 (1991) (stating that a plaintiff must demonstrate ownership of a valid copyright as well as copying of constituent elements of the work that are original) (citations omitted); *see also Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004) (citations omitted); *Peel & Co., Inc. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 790 (5th Cir. 1999)).

**a.**

As to the first of these two elements, copyright ownership is demonstrated by showing proof of originality, copyrightability and compliance with applicable statutory formalities. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995) (citations omitted). A valid copyright certificate of registration constitutes *prima facie* evidence of the validity of a copyright. *Id.* (citing 17 U.S.C. § 410(c)). However, this presumption may be rebutted by a defendant so as to disprove the validity of a plaintiff's copyright. *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 n.10 (5th Cir. 1991) (citation omitted).

In the instant case, Plaintiffs have submitted to the Court copies of their certificates of registration for the Copyrighted Recordings that Defendant has allegedly infringed upon, thereby

11

setting forth *prima facie* evidence of the validity of their copyrights. (Instrument No. 17, at 47-108). Further, Plaintiffs have submitted sworn declarations establishing that they held those valid copyrights prior to the date on which Defendant was discovered to be distributing those Copyrighted Recordings via his shared folder on KaZaA (that date being August 16, 2005). (Instrument No. 17, at 109-24). Moreover, Defendant does not challenge nor deny the validity of Plaintiffs' copyrights. Accordingly, as Plaintiffs' ownership of the Copyrighted Recordings in this case is not in dispute, the first element of Plaintiffs' copyright infringement claim against Defendant is satisfied.

### b.

Once the validity of the subject copyright(s) has been established, then the secondary inquiry is whether the copyright owner's exclusive rights under 17 U.S.C. § 106 have been violated, thereby resulting in copyright infringement. *See* 17 U.S.C. § 501(a) (stating that "Anyone who violates any of the exclusive rights of the copyright owner as provided by section[ ] 106 . . . is an infringer of the copyright . . ."). The exclusive rights afforded to an owner of a valid copyright by section 106 of the Copyright Act include the rights to *distribute* and reproduce the copyrighted material. *See* 17 U.S.C. § 106 (emphasis added).

"Distribute" is not defined in the Copyright Act, but the Supreme Court has equated the term with "publication," which is defined under the Act. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 552 (1985). "Publication" includes "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." 17 U.S.C. § 101. Courts have concluded that availing unauthorized copies of sound recordings for download using an online file-sharing system (such as a peer-to-peer network, as is the case here) constitutes an offer to distribute those works, thereby violating a copyright owner's

exclusive right to distribution. *See A&M Records, Inv. v. Napster, Inc.*, 239 F.2d 1004, 1014 (9th Cir. 2001) (explaining that individuals who download unauthorized music files and/or who avail such files for download by others commit copyright infringement).  Stated differently, making copyrighted works available for download via a peer-to-peer network contemplates "further distribution," and thus constitutes a violation of the copyright owner's exclusive "distribution" right under 17 U.S.C. § 106(3).

In this case, Plaintiffs assert that Defendant has already conceded that he distributed the Copyrighted Recordings, thereby satisfying element two of their copyright infringement claim because in doing so, he violated their exclusive right to distribute the Copyrighted Recordings. Specifically, Plaintiffs assert that in Defendant's responses to Plaintiffs' first set of request for admissions, Defendant admitted to placing the Copyrighted Recordings, along with other sound recordings, into a shared folder on his computer while being connected to the media distribution system or peer-to-peer network KaZaA.  (Instrument No. 17, at 8-9 – *First Set of Request for Admission*s). Plaintiffs urge that in doing so, Defendant availed the 558 digital music files (or sound recordings) in his shared folder at that time, which included the Copyrighted Recordings, for distribution to the vast community of persons also connected to KaZaA at the time MediaSentry detected him online – that time being on August 16, 2005, at approximately 1:34 a.m. EST. Defendant concedes that he did place the subject Copyrighted Recordings in his shared folder for distribution to other users while being connected to KaZaA, but asserts that he did not know that doing so was unlawful. (*Id.*, at 9 – *First Set of Request for Admission*s).

On these facts, it is self-evident that Defendant's actions in placing Plaintiffs' Copyrighted Recordings in a shared folder accessible to numerous other persons on KaZaA constituted a

"distribution" for the purposes of Plaintiffs' copyright infringement claim against Defendant. "Distributing copyrighted sound recordings without authorization through a peer-to-peer network such as KaZaA is a 'distribution' prohibited by the [C]opyright [A]ct." *Artista Records, LLC v. Butler*, No. 8:07-cv-3-T-23EAJ, 2007 WL 4557198, at * 2 n.6 (M.D. Fla. Dec. 21, 2007). Numerous courts have assessed whether availing music and/or media for download by other users on a peer-to-peer network constitutes copyright infringement as a matter of law. *See In Re Aimster Copyright Lit.*, 334 F.3d 643, 645 (7th Cir. 2003) (explaining that "If the music is copyrighted, [ ] swapping, which involves making and transmitting a digital copy of the music, infringes copyright. The swappers . . . are [ ] direct infringers."), *cert. denied*, 540 U.S. 1107 (2004); *Elektra Entm't Group Inc. v. Brimley*, No. CV205-314, 2006 WL 2367135, at *2 (S.D. Ga. Aug. 15, 2006) (similarly stating that "It is clear that use of a peer-to-peer media distribution system to share music files infringes copyright."); *Sony Music Entertainment Inc. v. Does 1-40*, 326 F.Supp.2d 556, 565 (S.D.N.Y. 2004) (observing that the use of peer-to-peer networks to "download and distribute copyrighted music has been held to constitute copyright infringement") (citations omitted).

Accordingly, because it has been established that Plaintiffs are the valid owners of the thirty-one Copyrighted Recordings at issue and because it has been both proven and admitted to that the Defendant intentionally downloaded and/or distributed those Copyrighted Recordings, no genuine issue of material fact remains as to Plaintiffs' claim for copyright infringement against Defendant. Therefore, Plaintiffs' motion for summary judgment as to their copyright infringement claim is **GRANTED**.[4]

---

[4]      As to Defendant's argument that he did not know that his conduct was unlawful and that at worst he is an innocent infringer is wholly unavailing. *See BMG Music v. Gonzalez*, 2005 WL 105592, at *1 (N.D. Ill. Jan. 7, 2005) (stating that to permit a defendant "to assert [an innocent infringer] defense based on [his] ignorance of the

14

**2.**

Once copyright infringement has been found, "the copyright owners may elect, at any time

before final judgment is rendered, to recover, instead of actual damages and profits, an award of

statutory damages for all infringements involved in the action, with respect to any one work . . . in

a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).

Furthermore, if the Court finds that "the infringer was not aware and had no reason to believe that

his or her acts constituted an infringement of copyright, the court in its discretion may reduce the

award of statutory damages to a sum of not less than $200," but if the Court finds "that infringement

was committed willfully, the court in its discretion may increase the award of statutory damages to

a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).  "A plaintiff may elect statutory damages

'regardless of the adequacy of the evidence offered as to his actual damages and the amount of the

defendant's profits.'" *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,

259 F.3d 1186, 1194 (9th Cir. 2001) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on

Copyright*, § 14.02[A] (2000)).

Here, Plaintiffs ask for the minimum statutory damages in the amount of $750 for each of

the thirty-one Copyrighted Recordings for a sum total of $23,250.  In response, Defendant analogizes

the imposition of such damages to imposing punitive damages on the order of 750 times Plaintiffs'

actual damages per infringed work.  Defendant also asserts that any infringement committed by

Defendant was not done so willfully and therefore, the Court should reduce the amount of damages

---

law would eviscerate copyright protection and the old adage that 'ignorance is no defense to the law.'").  A
defendant's intent to infringe is irrelevant under the law.  *Chavez v. Arte Publico Press*, 204 F.3d 601, 607 (5th Cir.
2000).

available to Plaintiffs.[5]  (Instrument No. 19, at 4).

However, Defendant's argument must fail, both because Plaintiffs are entitled to, at the very least, the minimum statutory damages for Defendant's infringement of their Copyrighted Recordings, but also because Defendant's arguments are intellectually inaccurate.  For instance, Defendant asserts that Plaintiffs' actual damages per infringed Copyrighted Recording are approximately ninety-nine cents, because the songs can be readily purchased online for that price.  Yet, the true cost of Defendant's harms in distributing Plaintiffs' Copyrighted Recordings for download by other users on KaZaA is incalculable.  That is, there is no way to ascertain the precise amount of damages caused by Defendant's actions in not only improperly downloading Plaintiffs' Copyrighted Recordings himself but also subsequently distributing some or all of Plaintiffs' Copyrighted Recordings to a vast community of other persons on KaZaA.  Clearly, under such circumstances, Plaintiffs' actual damages exceed ninety-nine cents per Copyrighted Recording.

Furthermore, Defendant concedes that he placed the subject Copyrighted Recordings, along with other sound recordings, into a shared folder on his computer while being connected to the media distribution system or peer-to-peer network, KaZaA.  Defendant also concedes that he knowingly did so without the consent or authorization of Plaintiffs.  Thus, even though the Court acknowledges the possibility that Defendant did not appreciate the gravity of his actions in the context of copyright law, that nevertheless does not amount to a wholesale lack of willfulness.  *See Broadcast Music Inc., v. Xanthas, Inc.,* 855 F.2d 233, 236 (5th Cir. 1988) (explaining that "A defendant acts 'wilfully'

---

[5]    Defendant further argues that he "has a Seventh Amendment right to have a jury determine the amount of statutory damages, if any, that should be awarded to [Plaintiffs]."  (Instrument No. 19, at 4).  This argument does not apply where, as here, a plaintiff seeks only the minimum statutory damages.  *See Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 342 (1998).

within the meaning of § 504(c)(2) . . . if he knows his actions constitute an infringement; the actions need not have been malicious."); *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d. Cir. 1999) (explaining that infringement is willful if the defendant had knowledge that his conduct constituted infringement or where defendant recklessly disregarded the possibility that his conduct might constitute infringement). Given Defendant's admittedly intentional conduct and the incalculable harm to Plaintiffs, a reduction in individual damages for each of Plaintiffs' infringed Copyrighted Recordings from, for instance, $750 to $200, as suggested by Defendant, would be inappropriate.

Therefore, because Plaintiffs have sought the statutory minimum of $750 under 17 U.S.C. § 504(c)(1) for each of the thirty-one Copyrighted Recordings at issue, the Court concludes that Plaintiffs are entitled to a total award of $23,250 in statutory damages.

### 3.

Section 505 of the Copyright Act also permits a plaintiff to recover the costs of the suit, in the court's discretion.  17 U.S.C. § 505 (providing that "the court in its discretion may allow the recovery of full costs by or against any party").  In this case, Plaintiffs also ask for $420 in costs, comprised of a $350 filing fee and a $70 service fee.  The Court finds that the costs incurred are reasonable under the circumstances of this case and that Plaintiffs are awarded $420 in costs against Defendant.

### 4.

In addition to statutory damages and costs, Plaintiffs ask the Court to enter a permanent injunction against Defendant. Under § 502(a), a court may grant a permanent injunction on terms it finds reasonable to prevent or restrain copyright infringement. 17 U.S.C. § 502(a). To obtain a permanent injunction, a party must demonstrate: (1) actual success on the merits; (2) no adequate

17

remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F .3d 597, 600 (5th Cir.1996).

In this case, Plaintiffs have succeeded on the merits against Defendant. Moreover, Plaintiffs have no adequate remedy at law because Plaintiffs' injury cannot be fully compensated or measured in money. *See, e.g., Arista Records, Inc. v. Beker Enters.*, 298 F.Supp.2d 1310, 1414 (S.D. Fla. 2003). Without an injunction, Plaintiffs' Copyrighted Recordings, past and future, would remain vulnerable to continued infringement by Defendant. *Id.* No burden is imposed on Defendant by an injunction to refrain from further infringements because he is merely required to comply with the law. Further, the public interest is served by upholding copyright protections.

Accordingly, the Court finds that Plaintiffs are entitled to a permanent injunction enjoining Defendant from infringing on Plaintiffs' Copyrighted Recordings, whether now in existence or later created, and requiring Defendant to destroy all unauthorized copies. *See Beker Enters.*, 298 F.Supp.2d at 1315 (explaining that "Because Plaintiffs continually create new works-works that would be vulnerable to infringement if the injunction were limited to existing works, and that would require new litigation to redress each future infringement-the requested injunction follows standard practice in copyright cases by covering works to be created in the future."); *see also* 17 U.S.C. § 503(b) (stating that "As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . ").

Defendant is hereby permanently **ENJOINED** from directly or indirectly infringing on Plaintiffs' rights under federal or state law in the Copyrighted Recordings (as delineated in this

18

order) and any sound recording, whether now in existence or later created, that is owned or controlled by Plaintiffs (or any parents, subsidiary, or affiliate record label of Plaintiffs) ("Plaintiffs' Recordings"), including without limitation by using the Internet or any online media distribution system to reproduce (*i.e.*, download) any of Plaintiffs' Recordings, to distribute (*i.e.*, upload) any of Plaintiffs' Recordings, or to make any of Plaintiffs' Recordings available for distribution to the public, except pursuant to a lawful license or with express authority of Plaintiffs.  Defendant also shall destroy all copies of Plaintiffs' Recordings that Defendant downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.  (Instrument No. 1, at 5).

## VI.

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED**. **(Instrument No. 16)**. Plaintiffs are awarded statutory damages in the amount of $23,250 and costs in the amount of $420, for a total damages and costs award of $23,670 against Defendant. Defendant is also permanently enjoined from infringing on the Copyrighted Recordings of Plaintiffs as described herein. Lastly, while Plaintiffs' motion for summary judgment was *sub judice*, the United States filed a motion to intervene in defense of the constitutionality of the Copyright Act. **(Instrument No. 30)**. The Court, having read and considered the motion, hereby orders that it is **DENIED AS MOOT**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 12 day of March, 2008, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**